UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTI A. HARLOW,

                 Plaintiff,

         -v-                   5:20-CV-1382

MOLINA HEALTHCARE, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

MARGARET E. MCINTYRE,    MARGARET E. MCINTYRE, ESQ.
   ATTORNEY AT LAW
Attorneys for Plaintiff
596 Henry Street
Brooklyn, NY 11231

GREENBERG, TRAURIG      ROBERT H. BERNSTEIN, ESQ.
   LAW FIRM              MICHAEL J. SLOCUM, ESQ.
Attorneys for Defendant
500 Campus Drive, Suite 400
Florham Park, NJ 07932

DAVID N. HURD
United States District Judge

### DECISION and ORDER

## I. INTRODUCTION

Plaintiff Christi A. Harlow ("Harlow" or "plaintiff") worked for defendant Molina Healthcare, Inc. ("Molina" or "defendant") as a coding analyst for a total of five months before that relationship turned sour, ending in her termination.  Dkt. No. 1.  On November 6, 2020, Harlow filed suit against defendant Molina alleging that they discriminated and retaliated against her. *Id.*

Harlow's eleven-count complaint asserts discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law (the "NYSHRL"), 42 U.S.C. § 1981 ("§ 1981"), the United States Equal Pay Act (the "Equal Pay Act"), and related state law. Dkt. No. 1.

On January 12, 2021, Molina answered Harlow's complaint and the parties proceeded to discovery.  Dkt. No. 4.  In June and July of 2023, Harlow withdrew her gender-based pay discrimination claims under Title VII, the Equal Pay Act, and the New York Equal Pay Act.[1]  Dkt. No. 54-1.

---

[1] Harlow also withdrew her race-based pay discrimination claims under Title VII, the NYSHRL, and § 1981 based on the pay of other Provider Relations Representatives employed by defendant. Dkt. No. 54-1.  This leaves only her pay discrimination claim based on the pay disparity with her former supervisor, Jennifer Hendrix under the NYSHRL and § 1981.  *Id.*

On July 13, 2023, Molina moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  Dkt. No. 53.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 54, 57.

## II.  BACKGROUND[2]

### A.  Plaintiff's Role and Responsibilities at Molina

On September 17, 2018, Molina hired Harlow, an African-American woman, as a Coding Analyst.  Pl.'s Statement of Add'l Material Facts ("Pl.'s Facts"), Dkt. No. 54 ¶ 1; Plaintiff's Counter Stat. in Response to Def.'s Stat. of Mat. Facts, ("Pl.'s Reply") Dkt. No. 54 ¶ 1.  As a Coding Analyst, plaintiff's job was to "detect fraud in coding or billing patterns, audit medical records to validate coding accuracy[,] perform non-medical record review to validate billing accuracy, generate reports detailing audit findings, render provider coding education, establish a specifically designed compliance program to prevent and detect violations of applicable laws and violations to protect the businesses from liability of fraudulent or abusive practices."  Pl.'s Facts ¶¶ 2–3.

---

[2]  The following facts are drawn from the parties' statements of undisputed material facts and responses pursuant to Local Rule 7.1(a)(3), to the extent those facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein.  Molina disputes several of plaintiff's statements of additional fact but provides pinpoint citations to portions of deposition testimony that were not included in its submissions.  Accordingly those facts are deemed admitted in accordance with Local Rule 56.1(a).

This role required an Associate's Degree or equivalent experience, one-to-three years of coding experience, and a current coding certification. Pl.'s Facts ¶¶ 2–3. Harlow was well-qualified for her position. *Id.* ¶¶ 4–5. She was hired as an hourly, "at will" employee at a starting rate of $24.03 per hour, which amounted to approximately $50,000 annually. *Id.* ¶¶ 3–4, 13.

**B. Other Employees at Molina**

Harlow reported to Jennifer Hendrix ("Hendrix"), a Manager of Provider Relations. Pl.'s Reply ¶ 2. Prior to being promoted to Manager, Hendrix served as a Fraud Investigator from November 2016 until early 2018. Pl.'s Facts ¶ 6.

Some of Hendrix's responsibilities as a Fraud Investigator were to review claims for any "trends" or outliers, and to review and audit medical records. Pl.'s Facts ¶ 7. In addition to these responsibilities, Hendrix was also responsible for setting up the Special Investigations Unit and served as the Cost Containment Committee. *Id.* ¶¶ 8–9.

As a fraud investigator, Hendrix was paid an annual salary of $64,000 upon hiring. Pl.'s Facts ¶ 9. Her salary was raised to $65,600 in April 2017, and again in April 2018 to $67,568 before she was promoted. *Id.*

**C. Plaintiff's Sexual Harassment Complaint**

In November and December of 2018, Susan Browne ("Browne"), a Provider Relations Representative with Defendant, began touching Harlow in intimate

places such as plaintiff's lower back, shoulders, arm, and leg.  Pl.'s Facts ¶ 14; Ex. 2 to McIntyre Decl., Dkt. No. 54-4 at 10–19.[3]  This made plaintiff uncomfortable.  *Id.*  Hendrix witnessed one of these incidents in November 2018, when Browne rubbed the small of plaintiff's back.  *Id.* ¶ 15; Ex. 2 at 11.

Later, on December 13, 2018, Browne approached Harlow at her desk and rubbed her hand along plaintiff's arm, which could be felt through the knitting of her sweater.   Pl.'s Facts ¶ 17; Ex. 13 to McIntyre Decl., Dkt. No. 54-15 at 2–3.  After touching her arm, Browne asked plaintiff "Does your boyfriend touch you like that?"  *Id.*

On December 13, 2018, Harlow reported Browne's unwelcome advances to Hendrix.  Pl.'s Resp. ¶ 11; Ex. 2 at 11–15.  On The next day, plaintiff sent Hendrix another text message to let her know that she had been touched by her "on more than one occasion."  Pl's Facts. ¶ 11; Ex. 1 to McIntrye Decl., Dkt. 54-3 at 2.  Plaintiff later spoke to Hendrix about the incidents with Browne.  Pl.'s Facts ¶ 16; Ex. 2 at 12–15.

Hendrix recorded Harlow's complaints about Browne in a written document entitled "Supervisor's Memo to File."  Pl.'s Resp. ¶ 12.  Hendrix also drafted a written warning addressed to Browne.  *Id.* ¶ 13.  The warning was reviewed by Human Resources, finalized, and sent to Browne on

---

[3] Pagination corresponds to CM/ECF.

December 18, 2018.  Pl's Facts ¶ 14.  The warning stated that Browne had violated the Molina Sexual Harassment Policy and cautioned Browne that future infractions "may result in further disciplinary action up to and including termination of employment."  Pl.'s Resp. ¶¶ 15– 16.

Browne continued to harass Harlow.  On February 1, 2019, plaintiff emailed Scott Morrison of Human Resources to escalate her complaint about Browne's behavior.  Pl.'s Resp. ¶ 17; Ex. 3 to McIntyre Decl., Dkt. No. 54-5 at 2.  Plaintiff expressed her discomfort that Browne was "staring" at her during the workday in front of other coworkers.  *Id.*

**D.  Plaintiff's Performance at Molina**

On December 13, 2018, Harlow received a positive performance evaluation.  Pl.'s Resp. ¶ 18; Ex. 5 to McIntyre Decl., Dkt. 54-7 at 2–5.  Plaintiff's evaluation described her performance as either "exceeds expectations" or "meets expectations" in all relevant categories.  *Id.*   Plaintiff received this positive evaluation the same week that she submitted her sexual harassment complaint.  *Id.*

Yet, on February 15, 2019, after submitting her sexual harassment complaint, plaintiff received a written Disciplinary Action Notice by Hendrix.  Pl.'s Resp. ¶ 18.  The Disciplinary Action Notice stated that plaintiff had "violated the Standards of Conduct Policy" due to inappropriate and/or unprofessional behavior including using a "disrespectful and insubordinate

tone" with supervisors, becoming "aggressive" with coworkers, and failing to complete assigned work. *Id.* ¶ 19. The Disciplinary Action Notice also informed plaintiff of her professional expectations going forward and stated that future infractions may lead to her termination. *Id.* ¶ 20–21.

According to Harlow, Lucien Gozzi ("Luke Gozzi" or "Gozzi"), Director of Operations, "blamed" plaintiff for the ongoing conflict with Browne. Pl.'s Facts ¶ 18, 21; Ex. 14 to McIntyre Decl., Dkt. No. 54-16 at 2 ("As for this fighting, I am getting really, really tired of it."). Gozzi expressed that he believed plaintiff to be "toxic" and a "troublemaker" at work. Pl.'s Facts ¶ 31; Ex. 16 at 14–15. Gozzi reportedly told Browne "not to worry" about plaintiff's sexual harassment complaint. Pl.'s Facts ¶ 21; Ex. 7 to McIntyre Decl., Dkt. No. 54-9 at 30.

Harlow responded to this Disciplinary Action Notice with a document rebutting each of the accusations as either "subjective" or a mischaracterization of her conduct at work.[4] Pl.'s Resp. ¶ 19; Ex. 6 to McIntyre Decl., Dkt. No. 54-8 at 2–17. Hendrix concedes that she did not consider plaintiff to be a "troublemaker." Pl.'s Facts ¶ 23; Ex. 7 at 32. In

---

[4] Sometime after Harlow submitted her sexual harassment complaint, she notified Human Resources that she believed she was being retaliated against by other employees. Pl.'s Facts ¶ 29; Ex. 8 to McIntyre Decl., Dkt. No. 54-10 at 4–6. According to Luke Gozzi, Molina took no steps to investigate plaintiff's claim. *Id.* After she was terminated, plaintiff submitted another complaint to Molina stating that she believed she had been terminated due to retaliation and race discrimination. Pl.'s Facts ¶ 36; Ex. 17 to McIntyre Decl., Dkt. No. 54-19 at 2–5.

fact, Hendrix stated that other employees at Molina had engaged in conduct to provoke plaintiff.  Pl.'s Facts ¶ 19; Ex. 7 at 27–28.  According to Hendrix, Molina had been actively "building a case" to terminate plaintiff beginning as early as January.  Pl.'s Resp ¶ 19; Ex. 7 at 6–7.

### E.  **Molina's Termination of Harlow**

Molina terminated plaintiff effective February 21, 2019.  Pl.'s Resp. ¶ 23. That day, Scott Morrison expressed that he did not believe that terminating plaintiff was a good decision and that their reasoning was not sufficient in the face of plaintiff's retaliation complaint.  Pl.'s Facts ¶ 32; Ex. 16 at 15. However, Julie Emerson and Luke Gozzi responded that they had already received approval to terminate plaintiff.  *Id.*

### F.  **Administrative Remedies Sought**

In February 2019, Harlow filed complaints with the New York State Division of Human Rights ("DHR") alleging employment discrimination and retaliation by Molina.  Compl. ¶ 7.  Thereafter, plaintiff received a Notice of Right to Sue letter from the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 8, 10. Plaintiff commenced this lawsuit on November 6, 2020, within ninety days of receiving the EEOC notice.

## III.  **LEGAL STANDARD**

Under Rule 56, summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In reviewing the motion, the district court must "draw all reasonable inferences against the party whose motion is under consideration." *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (citation omitted).

## IV.  DISCUSSION

Harlow asserts claims for (1) sex discrimination under Title VII and the NYSHRL (Counts I and II), (2) retaliation under Title VII and the NYSHRL (Counts III and IV), and (3) race discrimination under Title VII, the NYSHRL, and § 1981 (Counts V, VI, VII and XI). Defendant has moved for summary judgment to dismiss all of plaintiff's claims.

### A.  Race Discrimination

First, Harlow brings race discrimination claims under Title VII, the NYSHRL, and § 1981 (Counts V, VI, VII, and XI). Compl. ¶¶ 96–105, 112–13. Plaintiff asserts that she suffered disparate treatment when she was terminated and when she was paid less than other employees outside her protected class. *Id.* These theories rely on different material facts and will be addressed separately.

Discrimination claims brought under Title VII, § 1981, and the NYSHRL are governed by the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 111 (S.D.N.Y. 2022) (collecting cases). "Under this framework, at the summary judgment stage, a plaintiff must first demonstrate a *prima facie* case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)).

As relevant here, an "[i]nference of discrimination 'is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Barella v. Vill. of Freeport*, 16 F. Supp. 3d 144, 162 (E.D.N.Y. 2014) (quoting *Howard v. MTA Metro–N. Commuter R.R.,* 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011)). Such circumstances may include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the

plaintiff's [adverse employment action]." *Id.* (quoting *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001)).

Courts have frequently described a plaintiff's burden of establishing a *prima facie* case as "minimal." *Alvarado*, 631 F. Supp. 3d at 111 (quoting *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016)). Once a plaintiff has established her *prima facie* case, the burden shifts back to the defendant to "offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct." *Farmer*, 473 F. Supp. 3d at 324 (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 307 (2d Cir. 2015)). Once the defendant makes that showing, the burden returns to the plaintiff to demonstrate that defendant's reason is pretext for discrimination. *Id.*

## 1. <u>Termination</u>

Harlow brings a disparate treatment claim premised on her termination. Pl's Opp'n at 18–22. Molina argues that it is entitled to summary judgment on this claim because plaintiff has failed to establish a *prima facie* case of race discrimination, and even if she has, she is unable to demonstrate that defendant's reason for terminating her was pretext. Def.'s Mem. at 11.

Upon review, Harlow has established a *prima facie* case. The parties agree that Harlow was both a member of a protected class and that she suffered an adverse employment action when she was terminated from her position with Molina. Pl.'s Facts ¶ 1; Pl.'s Reply ¶ 23. Plaintiff has also

gathered more than enough evidence to support a "minimal" inference of discrimination.

Harlow asserts that statements made by her supervisor, Luke Gozzi, employed "a common stereotype of Black women as aggressive." Pl.'s Opp'n at 20. Plaintiff cites instances in which Gozzi characterized plaintiff as "toxic" and a "troublemaker" at work. Pl.'s Facts ¶ 31; Ex. 16 at 14–15. Gozzi later characterized plaintiff's sexual harassment complaint against Browne as "fighting" in the workplace and as making "a big deal about nothing." Pl.'s Facts ¶ 18, 21; Ex. 14 at 2. By contrast, Gozzi told Browne, who is white, "not to worry" about Harlow's complaint. Pl.'s Facts ¶ 21; Ex. 7 at 30. Plaintiff asserts that her sexual harassment complaint against Browne had been substantiated and that it was "patently irrational" for Gozzi to disbelieve her. Pl.'s Opp'n at 20.

A reasonable jury may well infer from Gozzi's statements that he harbored racial bias against Harlow. Specifically, Gozzi's characterization of plaintiff's sexual harassment complaint as "fighting" and making "a big deal about nothing" when plaintiff's claims had been substantiated by Molina. *See*

*Banks*, 81 F.4th at 271–72 (collecting cases).  Accordingly, plaintiff has established a *prima facie* case of race discrimination.[5]

Moving on to step two in the *McDonnell* analysis, Molina must present a legitimate, non-discriminatory reason for terminating plaintiff.  Defendant asserts that it terminated Harlow for "unacceptable behavior and poor performance."  Def.'s Mem. at 15.  Misconduct and/or poor performance is an acceptable reason to terminate an employee.  The Court then proceeds to the third step of the analysis: pretext.

Harlow asserts that she can demonstrate pretext: Molina admitted that it was manufacturing a reason to terminate her.  Pl.'s Opp'n at 17.  Plaintiff points to statements from Hendrix confirming that defendant had actively "built a case" to terminate her.  *Id.*; Pl.'s Resp ¶ 19; Ex. 7 at 6–7 ("Yeah. Well, I know that they were putting – putting things in action to make it look like she didn't meet her production goals.").

Evidence that defendant fabricated a reason to terminate plaintiff, coupled with Gozzi's statements perpetuating racial stereotypes is sufficient to defeat summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[5] Harlow also relies on a comparison of the way Molina treated her versus Browne after plaintiff filed her sexual harassment complaint.  Harlow argues Browne was treated more leniently by Molina after the sexual harassment complaint was made.  Plaintiffs who wish to base their disparate treatment claim on a comparator theory of causation must demonstrate that they were treated differently than a sufficient comparator.  *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quotation omitted).  Here, however, plaintiff acknowledges that she and Browne engaged in different conduct: Browne allegedly sexually harassed plaintiff and plaintiff filed a complaint reporting this conduct to Molina.  Pl.'s Facts ¶¶ 14–17.

133, 148 (2000) ("Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Therefore, Harlow has marshalled sufficient evidence, that, if credited, would permit the factfinder to conclude that Molina's reason for terminating her was pretext for race discrimination.  Accordingly, defendant's motion for summary judgment on plaintiff's disparate treatment claims based on her termination must be denied.

## 2.  **Disparate Pay**

Next, Harlow brings a disparate treatment claim premised on her claim that she was paid less than Hendrix, her supervisor, when Hendrix occupied a similar role at Molina.  Pl.'s Opp'n at 22–26.  Molina argues that it is entitled to summary judgment because plaintiff is unable to show that race discrimination played any role in determining plaintiff's hourly rate of pay.  Def.'s Mem. at 17.

Harlow's disparate pay claims are subject to the same burden shifting framework as her disparate treatment claims based on her termination because they are grounded in the same legal theory: plaintiff was discriminated against because of her protected class and suffered an adverse employment action as a result.  Plaintiff must first establish a *prima facie* case of race discrimination.  *Farmer, LLC*, 473 F. Supp. 3d at 324.

It is undisputed that Harlow is a member of a protected class, possessed the requisite skills to perform her role, and suffered an adverse employment action when she was paid less.  Pl.'s Facts ¶¶ 1, 4; Pl's Resp. ¶ 23.  However, Molina again disputes whether plaintiff has identified circumstances that give rise to an inference of discrimination.  Def.'s Mem. at 17.

To establish an inference of discrimination, Harlow pursues a comparator theory.  Plaintiff alleges that she was paid significantly less than Hendrix, who is white, for the same work.  Pl.'s Facts ¶ 6.  Plaintiff argues that despite the difference her title, Hendrix performed the same work as a Fraud Investigator that plaintiff did as a Coding Analyst.  *Id.*  Molina contends that Hendrix had substantially more responsibility as a Fraud Investigator and is therefore not similarly situated to plaintiff.  Def.'s Mem. at 16–18.

When a plaintiff advances a theory of disparate treatment, she must show that "she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  "[I]n the disparate pay context, a plaintiff typically must plead [and prove] comparators' relevant experience and length of employment in order to raise an inference of discrimination."  *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 118 (S.D.N.Y. 2020) (citation

omitted).  Whether a comparator is similarly situated to the plaintiff is ordinarily a question of fact for the jury.  *Graham*, 230 F.3d at 39.

Here, Harlow seeks to compare herself to Hendrix.  Plaintiff argues that Hendrix had the same qualifications and performed many of the same tasks as plaintiff when Hendrix worked as a Fraud Investigator.  Pl.'s Facts ¶ 6.  On one hand, some of Hendrix's responsibilities as a Fraud Investigator overlapped with many of plaintiff's responsibilities as a coding analyst.  Pl.'s Facts ¶¶ 2–3, 7.  But on the other, Hendrix was also responsible for running both the Special Investigations Unit and the Cost Containment Committee.  *Id.* ¶¶ 8, 10.  The parties agree that plaintiff did not share those duties.  Taking these facts together, a reasonable jury could conclude that while Hendrix and plaintiff's roles and responsibilities were not identical, they were sufficiently similar.

The Court then proceeds to the second step in the *McDonnell* analysis.  Molina argues that Hendrix was paid more for different work than plaintiff performed—not racial animus.  Def.'s Reply at 10–11.  The burden then returns to plaintiff to demonstrate that the reason for her lower pay was pretext for race discrimination.

However, even assuming that plaintiff can demonstrate to the jury that she was similarly situated to Hendrix, her claim would fail.  Plaintiff's disparate pay claim is still a race discrimination claim.

To survive summary judgment, Harlow must demonstrate discriminatory animus by Molina.  Evidence of disparate pay alone does not demonstrate intentional race discrimination.  *See Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 575 (W.D.N.Y. 2018) (collecting cases).

Upon review, plaintiff has not gathered any evidence that a jury might rely on to find defendant intentionally discriminated against her when they set her hourly pay.  Plaintiff submits no evidence that defendant intentionally paid her less on account of her race.  She only points to Hendrix's higher rate of pay.

Therefore, Harlow has not gathered sufficient evidence to establish that her lower pay was motivated by racial animus by Molina.  Accordingly, defendant's Molina's motion for summary judgment as to plaintiff's disparate pay claims will be granted.

**B.  Sex Discrimination**

Next, Harlow brings discrimination claims under both Title VII and the NYSHRL (Counts I and II) on the basis of sexual harassment.  Compl. ¶¶ 88–91.  Plaintiff alleges that she was subjected to a hostile workplace when she was sexually harassed on repeated occasions by Susan Browne.  *Id.*  Molina argues that it is entitled to summary judgment because no reasonable jury could conclude that Browne's conduct was motivated by plaintiff's sex, rose to

the level of severity or pervasiveness required to be actionable, or may be imputed to defendant.  Def.'s Mem. at 5–9.

"Hostile workplace claims brought under Title VII . . . and the NYSHRL are assessed using the same standard."[6] *Banks v. General Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023) (collecting cases).  To prove her hostile workplace claim under either Title VII or the NYSHRL, "plaintiff must establish that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Legg v. Ulster Cnty.*, 979 F.3d 101, 114 (2d Cir. 2020) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (quotation omitted) ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'").

In other words, the plaintiff must demonstrate that "either a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her

---

[6]  The NYSHRL was amended in August 2019 and made effective in October 2019.  Claims brought under amended statute are analyzed under the same standards as the New York City Human Rights Law.  *See Wheeler v. Praxair Surface Techs. Inc.*, --- F. Supp. 3d ----, 2023 WL 6282903, at *10 (S.D.N.Y. Sept. 26, 2023).  However, the conduct at issue occurred in 2018 and must be analyzed under the previous version of the statute.

working environment." *Krul v. DeJoy*, --- F. Supp. 3d ----, 2023 WL 8449589, at *33 (N.D.N.Y. Dec. 6, 2023) (quoting *Alfano v. Costello*, 294 F.3d 365, 372 (2d Cir. 2002)).  This standard contains both objective and subjective elements.  *Id.*  A plaintiff must *subjectively* perceive her work environment to be abusive.  But the misconduct at issue must also be "severe or pervasive enough to create an *objectively* hostile or abusive work environment[.]"  *Id.* (quoting *Bentley v. Autozoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019)) (emphasis added).

Of course, Harlow must also establish that she was suffered the alleged harassment because of her sex.  *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  Here, the harassment that plaintiff allegedly suffered was committed by another woman.  To prove that same-sex-harassment occurred because of her sex, plaintiff can "(1) provide credible evidence that the harasser was homosexual; (2) demonstrate that the harasser was motivated by general hostility to the presence of women in the workplace, or (3) offer direct, comparative evidence about how the alleged harasser treated members of both sexes differently in a mixed-sex workplace."  *Redd*, 678 F.3d at 173 (quoting *Oncale*, 523 U.S. at 80) (cleaned up); *see also Pimental v. Atrium Hosp. Grp.*, 2022 WL 4104012, at *8 (D. Conn. Sept. 7, 2022).

Drawing all reasonable inferences in favor of Harlow, she has demonstrated that there are triable issues of fact regarding whether Browne's conduct was sufficiently severe or pervasive.  First, plaintiff's evidence tends to establish that Browne's conduct bothered and perhaps traumatized her, causing interference with plaintiff's working environment, satisfying the subjective prong.  Pl.'s Opp'n at 15.

Harlow's evidence could also satisfy the objective element of this analysis. Plaintiff cites numerous instances in which Browne touched her without her consent.  Pl.'s Opp'n at 14.  Plaintiff points to evidence that Browne placed her hands on the small of plaintiff's back, shoulders, leg, and her bare arm. *Id.*  On that final occasion of physical contact, Browne allegedly asked plaintiff "Does your boyfriend touch you like that?"  *Id.*  Taken together and viewed in the light most favorable to plaintiff, the non-movant, a reasonable jury could find that Browne's conduct was sufficiently severe or pervasive.

These same instances of conduct, if credited by a jury, could establish that Browne's conduct was motivated by plaintiff's sex.  While it is undisputed that Browne's sexuality is unknown, Pl.'s Opp'n at 14, her attraction towards plaintiff may be inferred from her conduct.  Plaintiff points to numerous instances of unwanted touching by Browne.  Pl.'s Facts ¶¶ 14–15, 17.  These unwelcome advances were paired with suggestive language that could well be viewed by a factfinder as *sexually* suggestive.  *Id.* ¶ 17.  Drawing all

reasonable inferences in favor of plaintiff, a reasonable jury could find that Browne's conduct was motivated by plaintiff's sex.

Finally, plaintiff argues that Browne's conduct can be imputed to Molina because Browne's harassment continued even after she was issued a written warning.  Pl.'s Opp'n at 16.  Plaintiff points to emails sent to Scott Morrison of Human Resources on February 1, 2019, informing him of Browne's continued harassment.[7]  Pl.'s Reply ¶ 17; Ex. 3 at 2.  Defendant did not respond to this complaint or correct Browne's behavior.  Instead, the course of action taken by defendant in response to this news was to terminate plaintiff. Therefore, plaintiff has marshalled sufficient evidence to establish triable issues of fact as to whether Browne's conduct may be imputed to defendant. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (quotation omitted) ("When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'").

Accordingly, Molina's motion for summary judgment of Harlow's sex discrimination claims will be denied.

## C. **Retaliation**

---

[7] Plaintiff complained of Browne's staring at her and informed Morrison that she "felt compelled to put her complaint in writing to protect herself."  *Id.*

Next, Harlow brings a claim for retaliation under Title VII and the NYSHRL (Counts III, IV).  Compl. ¶¶ 92–95.  According to plaintiff, Molina retaliated against her when it terminated her for complaining about Browne's sexual harassment.  Pl.'s Opp'n at 16–18.  Defendant argues that it is entitled to summary judgment because plaintiff has not demonstrated that its reason for terminating her was pretext for retaliation.  Def.'s Mem. at 14.

Like Harlow's race discrimination claims, retaliation claims brought under Title VII and the NYSHRL are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023).  "To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (i) she was engaged in protected activity; (ii) the alleged retaliator knew that she was involved in protected activity; (iii) an adverse decision or course of action was taken against her; and (iv) a causal connection exists between the protected activity and the adverse action." *Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.*, --- F. Supp. 3d ----, 2023 WL 6393739, at *6 (S.D.N.Y. Sept. 30, 2023).

As relevant here, "[p]roof of causation can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff

by the defendant." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Once plaintiff has established her *prima facie* case, defendant must provide a "legitimate, non-retaliatory reason for the allegedly retaliatory action." *Carr*, 76 F.4th at 177 (citing *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)).  The burden then shifts back to plaintiff to prove that "the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (quoting *Chen*, 76 F.4th at 70).

Upon review, Harlow has established a *prima facie* case of retaliation.  It is undisputed that plaintiff engaged in protected activity—filing a sexual harassment complaint—and that Molina was aware it.  Pl's Resp ¶ 12.  It is also undisputed that plaintiff suffered an adverse employment action when she was terminated.  *Id.* ¶23.

Harlow has also demonstrated a fact question as to the causal link between these two events.  Plaintiff made her sexual harassment complaint in December 2018 and was terminated approximately two months later, on February 21, 2019.  Pl.'s Facts ¶¶ 11, 16; Pl.'s Resp. 23.  This short timeline is well within the outer limits imposed by the Second Circuit to establish causation.  *Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).

At step two, the burden shifts back to Molina to offer a legitimate, non-discriminatory reason for terminating Harlow and defeat the presumption of retaliation.  Defendant again asserts that it terminated plaintiff because of her "continued unacceptable behavior and poor performance."  Def.'s Mem. at 14.  Thus, the burden returns to plaintiff to demonstrate that these reasons were pretext for defendant's retaliation.

Upon review, Harlow has marshalled evidence from which a fact finder could conclude that Molina's reason for terminating her to retaliate against for her protected activity.  For instance, Hendrix testified that Human Resources had been actively "building a case" against plaintiff in the month prior to her termination to make it look like she had not been fired in retaliation for her sexual harassment complaint.  Pl.'s Opp'n at 17; Pl.'s Resp ¶ 19; Ex. 7 at 6–7.  This evidence, coupled with the temporal proximity between plaintiff's termination and her sexual harassment complaint, is more than sufficient to defeat summary judgment.

Accordingly, Molina's motion for summary judgment on plaintiff's retaliation claim will be denied.

## V.  <u>CONCLUSION</u>

In sum, Harlow has identified genuine disputes of material fact with regard to her race discrimination claim premised on her termination.  She has also raised triable issues concerning both her sex discrimination and

retaliation claims.  However, plaintiff has failed to gather sufficient evidence to survive summary judgment on her race discrimination claim premised on her disparate pay.

Therefore, it is

ORDERED that

1.  Defendant's motion for summary judgment of plaintiff's race discrimination claims based on her termination (Counts V, VI and VII) is DENIED;

2.  Defendant's motion for summary judgment of plaintiff's sex discrimination claims (Counts I and II) is DENIED; and

3.  Defendant's motion for summary judgment of plaintiff's retaliation claims (Counts III and IV) is DENIED; and

4. Defendant's motion for summary judgment of plaintiff's race discrimination claim based on her disparate pay (Count XI) is GRANTED.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  March 15, 2024
        Utica, New York.